Wilde J.
delivered the opinion of the Court. The plaintiff’s counsel except to the direction of the judge, and contend that no usage commencing within the time of legal memory is sufficient to establish a right by prescription ; and that it has been long settled, that the time of legal memoiy extends back to the commencement of the reign of Richard 1, so that in this country no prescriptive right founded on immemorial usage can be maintained by the principles of the com mon law.
That the time of legal memory, according to the law of England, extends back to the remote period contended for by the plaintiff’s counsel, cannot be denied ; but for what reason, or for what purpose, such a limitation should have been continued down to the present day, we are unable to ascertain. Cruise says, “ that it seems somewhat extraordinary, that the date of legal prescription should continue to be reckoned from so distant a period.” And to us it seems, that for all practical purposes it might as well be reckoned from the time of the creation. The limitation in question (if it can now be called a limitation) was first established soon after the St. Westm. (13 Ed. i, c. 39), and was founded on the equitable construction of that statute, which provided that no writ of right should be maintained except on a seisin from the time of Richard 1.
It was held that an undisturbed enjoyment of an easement for a period of time sufficient to give a title to land by possession, was sufficient also to give a title to the easement. 2 Roll. Abr. 269; 2 Inst. 238; Rex v. Hudson, 2 Str. 909; 3 Stark, on Ev. 1205. Upon this principle the time of legal memory was first limited, and upon the same principle, when the limitation of a writ of right was reduced by the statute of 32 Hen. 8, c. 2, to sixty years, a similar reduction should have been made in the limitation of the time of legal memory. This was required, not only by. public policy, to quiet long continued possessions, but by a regard to consistency, as it would have *525 been only following up the principle upon which the first limitation was founded.
And of this opinion was Rolle, (2 Roll. Abr. 269,) though he admits that at his time the practice was otherwise. Why the opinion of this eminent judge, founded as it was'on reasoning so solid and satisfactory, was not adopted by the courts, does not appear. But it does appear that the "principle on which his opinion was founded, was respected, and carried into operation in another form. For although the courts continued to adhere to the limitation before adopted, yet the long enjoyment of an easement was held to be a sufficient reason, not only to authorize, but to require the jury to presume a grant. And it has long been settled, that the undisturbed enjoyment of an" incorporeal right affecting the lands of another for twenty years, the possession being adverse and unrebutted, imposes on the jury the duty to presume a grant, and in all such cases juries are so instructed by the court. Not, however, because either the court or jury believe the presumed grant to have been actually made, but because public policy and con venience require "hat long continued possession should not be disturbed.
The period of twenty years was adopted in analogy to the statute of limitations, by which an adverse possession of twenty years was a bar to an action of ejectment, and gave a possessory title to the land. Thus it appears, that although prescriptive rights commencing after the reign of Richard 1. are not sustained in England, yet a possession of twrenty years only is sufficient to warrant the presumption of a grant; which is the foundation of the doctrine of prescription. In the one case the grant is presumed by the court, or rather is presumed by the law, and in the other case it is presumed by the jury under the direction of the court. The presumption in the latter case is in theory, it is true, a presumption of fact, but in practice and for all practical purposes, it is a legal presumption, as it depends on pure legal rules ; and as Starkie remarks, “it seems to be very difficult to say, why such presumptions should not at once have been established as mere presumptions of law, to be applied to the facts by the courts, without the aid of a jury. That course vvould certainly have been mo e simple, and any objec *526 Lon, as to the want of authority, would apply with equal if not superior force to the establishing such presumptions indirectly through the medium of a jury.”
But however this may be, it is clear that when the law became settled as it now is, and a party was allowed to plead a non-existing grant, and the jury were bound to presume it, on proof of twenty years’ possession, he would hardly be induced to set up a prescriptive right ; and the limitation of legal memory thus became in most cases of very little importance. And this is probably the reason why the period of legal memory, as it was limited soon after the statute of Westm. 1, has been suffered to go on increasing to the present time, although it has long since ceased to be of any practical utility, and is utterly inconsistent with the principle on which the limitation wot originally founded.
The question then is, whether the courts of this country were not at liberty to adopt the English law of prescription, with a modification of the unreasonable rule adhered to by the English courts in regard to the limitation of the time of legal memory. Certainly the law without the rule of limitation might have been adopted, and the courts here had competent authority to establish a new rule of limitation suited to the situation of the country. They had the same authority in this respect, that the courts in England had to establish the English rule of limitation. This rule could not be adopted here without a modification, and it was modified accordingly ; and in conformity with the principle of the English rule of limitation. This cannot be ascertained with certainty, but it is evident that the English rule could not have been adopted, and it is to be presumed that the period of sixty years was fixed upon as the time of limitation, in analogy to the statute of 32 Hen. 8, c. 2, and in conformity with the opinion of Rolle. At what period of our history the law of prescription was first introduced into practice in the courts of Massachusetts, cannot now be determined, but certainly it was before the time of legal memory, as we understand the limitation of it; and innumerable pleas of prescriptive rights are to be found in the records of our courts. So the cases reported by Dane show that the doctrine of prescription has been repeatedly recognized and *527 sanctioned by this Court. 3 Dane, 253, c. 79, art. 3, § 19. The only question has been, whether our time of legal memory was limited to sixty years, or whether it was to extend to a period beyond which no memory or record goes as to the right in question. The general opinion, we think, has been in favor of the limitation of sixty years ; and we think it decidedly the better opinion. This seems to us a reasonable limitation, and as before remarked, it is founded on the principle of the English rule of limitation, which was adopted in reference to the limitation of the writ of right by the statute of Westm. 1. Whether since the writ of right has been limited to forty years, a similar limitation of the time of legal memory ought to be adopted, is a question not raised in this case, and upon which we give no opinion.
The case of Ackerman v. Shelp, 3 Halst. 125, has been cited, to show that the doctrine of prescription has not been adopted in New Jersey ; but this is no reason why it should be rejected in Massachusetts, where it has long since been adopted, and is now familiar in practice ; adopted, too, not only by the authority of our courts, but with the implied sanction of the legislature. As early as the year 1641, it was ordered and decreed by the colonial legislature, that no custom or prescription should prevail in any moral case (that is, as it was declared) “ to maintain any thing that could be proved to be morally sinful by the word of God.” Ancient Charters, &c. 177. This provision, it is true, manifests great ignorance of the principles of the common law, and for the purpose for which it was framed was useless and inoperative. It serves nevertheless to show, that when afterwards the doctrine of prescrip tian was introduced into practice, it was not done without the countenance of the legislature ; although certainly no legislative authority was necessary to give it validity.[1]
But it has been argued, that the right set up by the defendant cannot be maintained, by the principles of the common law, as a right by prescription, or as a custom. The cases, however, cited in support of this argument, refer either to pri *528 vale rights or local customs. The right in question is a public prescriptive right, and as such it is well pleaded. It is similar to the easement which the public has in highways, and may well be prescribed for. In pleading such a public right to an easement, it is sufficient to aver, that the locus in quo is a public highway or public landing-place, &c. without showing how
oecame so; for it cannot be presumed that every party has knowledge of the origin of a public right. Aspindall v. Brown, 3 T. R. 265; 3 Chit. Crim Law, 570; 3 Dane, 248; Commonwealth v. Manning, S. J. Court, Essex County, 1795, in 3 Dane, 19, c. 71, art. 5, § 8, 9, 10; Gate-ward’s case, 6 Co. 60, 61.
Again, it has been argued, that the verdict is not supported by the evidence, as it does not appear that the place in question was a public landing-place for the use of the whole community; and as it has been always claimed and used by the inhabitants of Watertown as a town landing-place. But if this position could be maintained, it would not affect the merits of the case ; for it would only show that the third issue should have been found for the defendant instead of the second ; so that the plaintiff could not eventually prevail, if a new trial were granted. We think however the evidence is sufficient to maintain the second plea, and that the verdict is right. It is true that the inhabitants of Watertown have long claimed the locus as a town landing-place ; but they have not claimed it for their own exclusive benefit, but it has been used by the public at large, and by other citizens besides the inhabitants of Watertown. This public use and enjoyment of the landing-place, long continued and without any interruption or objection on the part of the town of Watertown, is sufficient, we think, to maintain the second plea, and to justify the finding by the jury.[1]

Judgment according to verdict.

 See Melvin v. Whiting. 10 Pick. 295; Kent v. Waite, 10 Pick. 138, Reed v. Northfield, 13 Pick. 94. For the laws of other States on this head, see the cases cited in 2 Hilliard’s Abr. 178 et seq. See also Revised Stat. c. 119.

 See Peequaiokett v. Mashes, 7 N. Hamp. R. 230